# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

CRAIG T. GOLDBLATT
JUDGE

824 N. MARKET STREET
WILMINGTON, DELAWARE
(302) 252-3832



August 19, 2022

**VIA CM/ECF**

      Re:    *Hoover v. Drivetrain LLC*, Adv. Pro. No. 20-50966.[1]

Dear Counsel:

      In bankruptcy cases that are preceded by mass layoffs or plant shutdowns, it is commonplace for former employees who assert claims arising under the WARN Act, 29 U.S.C. § 2101, *et seq.*, to file adversary proceedings and to seek the certification, under Rule 23 of the Federal Rules of Civil Procedure, of a class of affected employees. Indeed, in many cases, the propriety of treating the affected employees as part of a class is noncontroversial, and class certification is often accomplished by stipulation of the parties. This case, however, is different. While many of the debtor's employees worked at its principal location in Las Vegas, Nevada, it also had a substantial number of employees who worked remotely. The application of the WARN Act to remote employees is an issue of increasing importance as remote work becomes more prevalent and raises reasonably complex issues. Particularly in a case (like this one) that involves some employees who worked at the debtor's facility and others who were remote employees, the proper use of the class action raises questions over which there is substantial room for fair disagreement.

      In this case, the named plaintiffs (who themselves worked at the debtor's Las Vegas facility) originally moved to certify a class in August 2021.[2] That motion was

---

[1] Drivetrain LLC, as the plan trustee, is the successor to Cyber Litigation, Inc. ("Cyber"), which was the debtor in the main bankruptcy case, *In re Cyber Litigation Inc.*, No. 20-12702, and is the defendant in this adversary proceeding.

[2] The initial proposed class was to be made up of "Plaintiffs and all persons (i) who worked at, reported to, or received assignments from Defendant's Las Vegas Facility, (ii) who were terminated without cause beginning on or about September 11, 2020, and within 30 days of that date, or were terminated without cause as the reasonably foreseeable consequence of the mass layoff and/or plant closing ordered by Defendant on or about are 'affected employees' within the meaning of

*Hoover v. Drivetrain LLC*, Adv. Pro. No. 20-50966
August 19, 2022
Page 2 of 17

fully briefed in December 2021 and set for argument in January 2022. Following that argument, the Court concluded that while the record before it would warrant the certification of a class of employees who worked at the debtor's Las Vegas facility, the record was insufficient to permit the Court to determine whether debtor's remote employees could be included in the class. The parties thus engaged in additional discovery and submitted supplemental briefs addressing the results of that discovery. The Court heard the parties renewed arguments on August 11, 2022. At that argument, the Court expressed its tentative conclusion that the evidentiary record did support the certification of classes that included remote employees. The Court, however, raised the question, in view of the distinct legal questions regarding the application of the WARN Act to remote employees, whether the remote employees ought to be included in a separate subclass. As further described below, however, the Court has concluded that the named plaintiffs can properly and adequately represent a class that includes remote employees, and that common issues predominate over individual issues despite the presence of a few factual or legal wrinkles that may apply to some but not all of the class. The Court is persuaded that those specific issues may properly be addressed by an appropriate case management order issued under Rule 23(d)(1).

The Court did, however, express the concern that in view of the record as it developed, the question of which employees "received assignments from Defendant's Las Vegas Facility" was itself a disputed issue such that a class was defined by reference to the location from which an employee received assignments would not be sufficiently "ascertainable" to satisfy the requirement of Rule 23.[3] In light of the record before the Court and for the reasons more fully set forth below, the Court believes that the more appropriate definition of the class would replace the existing clause (i) so that the description of the class would begin: "Plaintiffs and all persons (i) who worked at Defendant's Las Vegas Facility and/or who worked in Defendant's sales or engineering departments, (ii) who were terminated…."

For the reasons described more fully below, the Court is satisfied that the record before it supports the certification of such a class. The Court will enter an appropriate order certifying such a class.

### Factual and Procedural Background

The debtor was a cyber-fraud prevention company. Its business collapsed in September 2020 when its founder, Adam Rogas, was indicted on fraud charges. It is

---

29 U.S.C. § 2101(a)(5), and (iv) who have not filed a timely request to opt-out of the class." D.I. 26 at 1.

[3] *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592-593 (3d Cir. 2012) (Rule 23(b)(3) class must be ascertainable based on objective criteria).

*Hoover v. Drivetrain LLC,* Adv. Pro. No. 20-50966
August 19, 2022
Page 3 of 17

alleged that Rogas falsified the debtor's financial records in order to raise more than $100 million from investors. Soon after Rogas' arrest, the debtors terminated the majority of its approximately 200 employees and soon thereafter filed for bankruptcy.[4]

Plaintiffs filed this WARN Act adversary proceeding in October 2020[5] and moved to certify it as a class action in August 2021.[6] Declarations submitted in support of the class certification motion established that the debtor's principal facility was located in Las Vegas, Nevada, but that the debtor also had a number of employees who worked remotely.[7] As described above, after the January 2022 ruling denying class certification without prejudice,[8] the parties engaged in additional discovery, much of which has been presented to the Court in connection with the renewed motion to certify.

In broad strokes, that discovery revealed that in addition to its Las Vegas employees, the debtor employed approximately 128 remote employees working in one of four departments: engineering, general and administration, marketing, and sales. D.I. 35-1. The two largest departments, the sales and engineering departments, collectively made up the vast majority of those employees. Additional factual material is set forth below, in the analysis section of this letter ruling, as appropriate.

## Jurisdiction

Because the plaintiffs seek, in this adversary, allowed claims in the bankruptcy case, the district court has subject-matter jurisdiction under 28 U.S.C. § 1334(b), as a dispute "arising under" § 502 of the Bankruptcy Code. The case has been referred to this Court under 28 U.S.C. § 157(a) and the district court's standing order of February 29, 2012.

---

[4] *See generally* the first-day declaration of Daniel P. Wikel, filed in the main bankruptcy case, *In re Cyber Litigation,* No. 20-12702 (Bankr. D. Del. Oct. 27, 2020), D.I. 9.

[5] D.I. 1.

[6] D.I. 26.

[7] D.I. 26-2.

[8] D.I. 58.

## Overview of Applicable Law

### A.   Class certification generally

Rule 23 of the Federal Rules of Civil Procedure governs class certification decisions.[9] Under Rule 23(a), the party seeking to certify a class bears the burden of demonstrating that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition to satisfying the requirements of Rule 23(a), a proposed class must satisfy at least one of the requirements of Rule 23(b).  Here, the plaintiffs invoke Rule 23(b)(3), which requires, among other things, a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[10]  The party seeking class certification has the burden of demonstrating that all the requirements for a class action under Rule 23(a) and (b) have been met and that the action should be certified as a class action.[11]

Courts must resolve all factual or legal disputes relevant to class certification and may allow discovery and consider evidence where appropriate in order to make the required factual findings.[12]  Class certification is proper only if the trial court is satisfied that the requirements of Rule 23 are met.[13]

In cases like this one, there is certainly some overlap between the class certification question and the merits issues.  The analyses, however, are distinct.  So even if the trial court must consider evidence that bears on a merits question, the focus of the analysis on a class certification motion is on the Rule 23 standards; the merits may be considered only to the extent necessary to resolve the issue of class certification.[14]

---

[9] Rule 23 is made applicable to adversary proceedings under Rule 7023 of the Federal Rules of Bankruptcy Procedure.

[10] Fed. R. Civ. P. 23(a).  *See also Comcast v. Behrend*, 569 U.S. 27 (2013).

[11] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

[12] *Marcus*, 687 F.3d at 591; *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 (3d Cir. 2011).

[13] *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 309 (3d Cir. 2008).

[14] *Id.* at 316-317 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)); *Wal-Mart Stores*, 564 U.S. at 351 & n.6.

*Hoover v. Drivetrain LLC*, Adv. Pro. No. 20-50966
August 19, 2022
Page 5 of 17

In a Rule 23(b)(3) case, the question of "predominance" focuses on whether the class is sufficiently cohesive to warrant collective adjudication. If proof of an essential element of the cause of action requires individual treatment, then class certification is unsuitable.[15] On the other hand, if proof of the essential elements of the cause of action does not require individual treatment, then class certification may be suitable.

There is no bright-line test for determining whether common questions of law or fact predominate. As the Third Circuit has explained, "[a] plaintiff must demonstrate that the element of the legal claim is capable of proof at trial through evidence that is common to the class rather than individual to its members. Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case."[16]

The *Moore's Federal Practice* treatise identifies eight considerations that might support a determination that common issues predominate over individual issues:

> (1) the plaintiff can establish that resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and that these issues are more substantial than the issues subject to individualized proof; (2) the substantive elements of the class members' claim require the same proof for each class member; (3) the proposed class is bound together by a mutual interest in resolving common questions more than it is divided by individual interest; (4) the resolution of an issue common to the class would significantly advance the litigation; (5) one or more common issues constitute significant parts of each class member's individual cases; (6) the common questions are central to all of the members' claims; (7) the same theory of liability is asserted by or against all class members, and all defendants raise the same basic defenses; and (8) it is more efficient, in terms of both judicial resources and litigation expenses, to decide some issues on a class basis, rather than individual trials.[17]

---

[15] *Hydrogen Peroxide*, 552 F.3d at 311.

[16] *Marcus,* 687 F.3d at 600 (internal quotations and citations omitted).

[17] 5 Moore's Federal Practice ¶ 23.45.

*Hoover v. Drivetrain LLC*, Adv. Pro. No. 20-50966
August 19, 2022
Page 6 of 17

The fact that there may be some number of individual issues does not preclude a finding of predominance.[18] Rather, it is left to the trial court to make a fact-specific determination, in light of its understanding and assessment of how the case is likely to proceed, about the relative importance of the individual issues as compared to those that are common to the class.

### B. Remote employees under the WARN Act

The WARN ACT provides (subject to certain exceptions) that an "employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order" to the employee (or, if there is one, the employee's representative).[19] The term "mass layoff" is defined by statute as one that (subject to other requirements) "results in an employment loss at the single site of employment" of "at least 33 percent of the employees" and "at least 50 employees," with part-time employees being excluded from the calculation for both purposes.[20]

These statutory terms then give rise to the question of what counts as the "single site of employment." That issue is not addressed in the text of the statute but is the subject of a Department of Labor regulation.[21] That regulation, commonly referred to as "Subpart 6," provides:

> For workers whose primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report will be the single site in which they are covered for WARN purposes.[22]

While the focus of this regulation, which apparently dates back to 1989,[23] appears to be more on "mobile" employees – those who travel regularly rather than

---

[18] *Gavron v. Blinder Robinson & Co.*, 115 F.R.D. 318, 325 (E.D. Pa. 1987) (determining presence of individual damages issues does not prohibit certification if common issues of liability predominate over individual issues of damages).

[19] 29 U.S.C. § 2102(a)(1).

[20] *Id.* § 2101(a)(3).

[21] The Department of Labor is granted, by statute, the express authority to "prescribe such regulations as may be necessary to carry out this chapter." *Id.* § 2107.

[22] 20 C.F.R. § 639.3(i)(6).

[23] *See* 54 Fed. Reg. 16064 (Apr. 20, 1989).

reporting to an office – than those who telecommute from home offices, the text of the regulation undoubtedly covers remote employees.

The leading Third Circuit opinion on the meaning of this regulation is *Ciarlante v. Brown & Williamson Tobacco Corp.*[24] The district court in that case granted summary judgment in favor of a class of more than 100 travelling salespeople who sold Brown & Williamson tobacco products to wholesalers and retailers located in the specific geographic regions to which they were each assigned (the nation was divided into 150 such districts). The summary judgment record suggested that the employees were typically in regular contact with both the sales manager for the particular district (who typically worked from home) as well as with other company employees who worked at the company' administrative center in Chester, Virigina.

The district court, finding that "all instructions, assignments, rules and orders to the plaintiff salesmen emanated from the Chester, Virginia headquarters,"[25] concluded that the administrative center was the "single site of employment" for the class of 100 employees who had been terminated in a mass layoff.[26]

The Third Circuit reversed the entry of summary judgment, finding that on the record before the district court, there was a genuine dispute of material fact on that issue. The court noted that the question of "single site of employment" was controlled by the Department of Labor regulation, and that a location will qualify as an employee's "single site of employment" if it is the employee's home base, the site from which the employee's work was assigned, *or* the site to which they employee reported.[27]

The Third Circuit found that Chester could not be the employees' "home base," but that there were genuine issues of fact on whether it was the site from which their work was assigned and whether it was the site to which they reported. On the issue of whether the headquarters was the basis from which work was assigned (which is the basis on which plaintiffs in this case claim that the debtor's Las Vegas headquarters was its single site of employment), the court explained that is concerned "with the source of the 'day-to-day instructions received by the sales representatives."[28] Noting that the employees emphasized the centralized control from corporate headquarters while the company focused on the role played by the regional sales managers (who were located in the individual districts), the court

---

[24] 143 F.3d 139 (3d Cir. 1998).

[25] *Id*. at 144.

[26] *Id*.

[27] *Id*. at 146.

[28] *Id*. at 147 (internal quotations omitted).

*Hoover v. Drivetrain LLC*, Adv. Pro. No. 20-50966
August 19, 2022
Page 8 of 17

explained that answering the question "may require a developed factual record in order to distinguish the true source of the instructions from mere conduits through which the instructions passed."[29]

*Ciarlante* thus makes clear that where a direct supervisor who is resident in a location other than the main headquarters is the "true source of the instructions," the location of that direct supervisor is the "single site of employment" as the site from which the employee's work was assigned. Where the direct supervisor is a "mere conduit," then the location of the original source of that instruction is the single site of employment. The degree of autonomy that an intervening supervisor must have to break the chain is a disputed question of law.

Plaintiffs argue that so long as corporate headquarters is playing any substantive role at all – as opposed to merely providing back-office support for the true decisionmakers who are in the field – the headquarters is the single site of employment. While it is not clear to the Court that the caselaw requires that construction of the Subpart 6 language, that is ultimately a merits question, which need not (and therefore should not) be resolved at the class certification stage.[30] As further addressed below, the key takeaways for the purpose of the current motion are that the plaintiffs will seek to meet their burden primarily by relying on evidence that the heads of the debtor's engineering and sales departments, both of whom were physically located in the company's Las Vegas headquarters, had sufficient substantive involvement that the headquarters should be treated as the site from which the employee's work was assigned, while defendants will respond by arguing that for some number of members within the class, lower level employees, who were not located in Las Vegas, were sufficiently "autonomous" such that those employees' single site of employment was not Las Vegas.

\* \* \*

In opposing class certification, defendant's principal arguments are that plaintiffs cannot satisfy the commonality or typicality requirements of Rule 23(a) or the predominance requirement of Rule 23(b). Alternatively, defendant argues that a separate subclass of remote employees should be required. For the reasons described below, this Court disagrees with those contentions and concludes that class certification (of the class as described above) is appropriate based on the record now before the Court. For the sake of completeness, however, the Court will also briefly address those requirements of Rule 23 that defendant is not contesting.

---

[29] *Id.*

[30] *See, e.g., Wal-Mart*, 564 U.S. at 352 n.6.

*Hoover v. Drivetrain LLC*, Adv. Pro. No. 20-50966
August 19, 2022
Page 9 of 17

**I.      The requirements of Rule 23(a) are satisfied.**

**A.      The class is so numerous that joinder of all members is impracticable.**

The record before the court makes clear that the class as defined contains more than 150 members.[31] There is no dispute that this satisfied the numerosity requirement. "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."[32] The requirements of Rule 23(a)(1) are thus met.

**B.      There are questions of law or fact common to the class.**

Defendant does not contest the fact that there are *some* common questions of law or fact, as Rule 23(a)(2) requires. "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."[33] Plaintiff's motion to certify identifies eight such questions:

> (a) whether Defendant employed more than 100 employees; (b) whether all the class members are protected by the WARN Act; (c) whether the class members were employees of Defendant; (d) whether Defendant discharged the class members within 30 days in connection with a mass layoff or plant closing or as the reasonably foreseeable result thereof; (e) whether the class members were 'affected employees'; (f) whether Defendant terminated the employment of the class members without cause; (g) whether Defendant terminated the employment of the class members without giving them at least 60 days' prior written notice as required by the WARN Act; and (h) whether Defendant owes the class members each 60 days' wages and benefits.[34]

This is sufficient to satisfy Rule 23(a)(2)'s commonality requirement.

**C.      The claims or defenses of the representative parties are typical of the claims or defenses of the class.**

As the Third Circuit has explained, to "evaluate typicality, we ask whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus

---

[31] D.I. 78-5; D.I. 78-7; D.I. 78-11.

[32] *Stewart v. Abraham*, 275 F.3d 220, 226-227 (3d Cir. 2001).

[33] *See Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

[34] D.I. 26 at 12.

*Hoover v. Drivetrain LLC*, Adv. Pro. No. 20-50966
August 19, 2022
Page 10 of 17

suggesting that the incentives of the plaintiffs are aligned with those of the class. Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory."[35]

Defendant disputes the claim that the named plaintiffs' claims are typical of those of any class that includes remote workers, since demonstrating the "single site of employment" for remote employees will require proof that will not be required to establish the claims of the named plaintiffs, both of whom worked in the Las Vegas facility.[36]

In response, plaintiffs contend that the named plaintiffs will have every incentive to establish that at least some of the remote employees' single site of employment was Las Vegas, since they otherwise might not meet the 50-employee threshold necessary to establish their WARN Act claim on the merits.[37]

It is certainly true that the claims of at least some of the remote employees involve factual nuances beyond those necessary for the named plaintiffs to litigate their own claims. But the Third Circuit has emphasized that when "an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice."[38] And it has added that "even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories."[39]

In view of this authority, the Court is satisfied that the factual differences do not preclude a finding of typicality. Plaintiffs here contend that the same course of events led to the termination of the named plaintiffs and the other members of the class and that all class members suffered the same type of injury. The named plaintiffs will indeed have an incentive to litigate that Las Vegas was the single site of employment for at least some of the remote employees in order to establish their own claims (which require a showing that at least 50 employees were affected). To be sure (and as discussed further below, in the discussion of predominance), the claims of some class members will involve wrinkles not raised by the claims of the named plaintiffs. And as further described below, these considerations did lead the Court to consider whether subclasses, with named plaintiffs whose own causes of

---

[35] *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-296 (3d Cir. 2006) (internal quotations, citations, and brackets omitted).

[36] D.I. 34 at 11.

[37] D.I. 35 at 12.

[38] *Baby Neal for and by Kanter*, 43 F.3d at 58.

[39] *Id.*

action implicated each of these factual wrinkles, would be more appropriate. But in light of the Third Circuit authority, the Court is persuaded that these wrinkles do not preclude a finding of typicality in the face of the basic uniformity of the principal legal theory that undergirds the claims of every member of the class. The requirements of Rule 23(a)(3) are therefore satisfied.

### D. The representative parties will fairly and adequately protect the interests of the class.

The Third Circuit has explained that the "adequacy requirement has two components: (1) concerning the experience and performance of class counsel; and (2) concerning the interests and incentives of the representative plaintiffs."[40]

Defendant challenges the adequacy of the named plaintiffs only on the second of these prongs, arguing that the differences between the claims of the named plaintiffs and those of the remote employees render the named plaintiffs inadequate.[41] That contention, however, substantially overlaps with the argument that the named plaintiffs' claims are not typical of those of the class, and fails for the same reason. As to the first component, the declaration of René Roupinian, submitted in support of the plaintiffs' motion,[42] persuasively sets forth class counsel's expertise in WARN Act litigation, which is not challenged by defendant. The requirements of Rule 23(a)(4) are therefore satisfied.

### II. The "predominance" and "superiority" requirements of Rule 23(b)(3) are satisfied.

Rule 23(b) provides that:

> A class action may be maintained if Rule 23(a) is satisfied and if … (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

---

[40] Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 181 (3d Cir. 2012).

[41] D.I. 82 at 18.

[42] D.I. 26-3.

    (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

    (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

    (D) the likelihood of difficulties in managing the class action.[43]

As described above, this analysis is focused on whether the class is sufficiently "cohesive" to warrant having the claims heard together.[44] That analysis typically involves ascertaining whether the key legal or factual issues are susceptible to being proven or disproven through common (rather than plaintiff-specific) evidence.

  This was the question on which the Court concluded the plaintiffs had not borne their burden of proof based on the affidavits submitted in support of the original motion to certify, leading the court to deny the motion without prejudice. Based on the supplemental record presented by the parties following discovery, the Court is now satisfied that class certification is appropriate. The Court acknowledges, however, that in view of the definition of the class to include all remote employees in the sales and engineering departments, it finds the question of predominance to be one that is fairly debatable. Indeed, during the August 11, 2022 hearing, the Court expressed the tentative view that subclasses might be more appropriate in light of the particular issues raised by the inclusion of these employees in the class definition. After a more careful review of applicable caselaw, however, the Court has concluded that subclasses are neither necessary nor appropriate. For the benefit of any potential reviewing court, this Court will set forth its reasoning on this issue.

  The Court begins its assessment of "predominance" by considering whether, on the one hand, the evidence the Court will need to consider in weighing the merits of the various claims will mostly be made up of evidence that is common to the class, or whether, on the other, there will be a substantial body of plaintiff-specific evidence that will need to be reviewed on a plaintiff-by-plaintiff basis. At some point (though ascertaining precisely where the tipping point is located is mostly a matter of judgment that is not susceptible to clear articulation), the individual issues will come to predominate over the common ones, such that it no longer makes sense to litigate the action on a class-wide basis.

---

[43] Fed. R. Civ. P. 23(b)(3).

[44] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997).

*Hoover v. Drivetrain LLC*, Adv. Pro. No. 20-50966
August 19, 2022
Page 13 of 17

As the discussion under Part I.B sets forth, there are a number of issues that will be litigated on a class-wide basis. Indeed, in addition to issues raised by the plaintiffs and described above, defendant's answer also asserts affirmative defenses, such as the claim that the terminations of employment resulted from unforeseeable business circumstances,[45] that will apply equally to all members of the class.

At the same time, resolution of the single-site-of-employment issue will require the consideration of some evidence that will apply to some but not all class members. Plaintiffs contend that a relatively small body of evidence will be sufficient to resolve the single-site-of-employment issue for a large swath of the class. Specifically, plaintiffs point to the declarations of Spencer Fairbairn (who served as Chief Technology Officer and headed the Engineering Department) and Tony Dawson (who served as Chief Revenue Officer and headed the Sales Department), contending that these witness' testimony will be sufficient to show that Las Vegas was the single site of employment for all of the employees in the sales and engineering departments.[46]

The defendant responds by predicting that the testimony of Dawson and Fairbairn will be insufficient, and that litigation of the single-site-of-employment issue will require the consideration of testimony from every intermediate supervisor to determine whether that supervisor exercised sufficient autonomy such that the supervisor's location (if that supervisor was not physically located in Las Vegas) should be the employee's single site of employment.

The case law makes clear that a determination of "predominance" requires the trial court to make a prediction about how the trial is likely to unfold.[47] And as Yogi Berra famously observed, it is "tough to make predictions, especially about the future." But based on the record before it, the Court's assessment is that the presence of individual issues is not likely to overwhelm the many common issues raised by this action. That conclusion is driven not by any judgment the Court has reached on the legal issue of what level of involvement from corporate headquarters is sufficient for that to be a plaintiff's single site of employment or from any conclusion drawn from the declarations or deposition testimony about how "autonomous" any of the supervisors who reported to Dawson and Fairbairn may have been. Those are both merits issues, from which the case law makes clear the Court should endeavor to steer clear, if at all possible, at the class certification stage.

---

[45] D.I. 20 at 7.

[46] D.I. 78-5; D.I. 78-11.

[47] *See, e.g., Waste Mgt. Holdings Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000) ("A district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case.").

*Hoover v. Drivetrain LLC*, Adv. Pro. No. 20-50966
August 19, 2022
Page 14 of 17

Instead, the Court's conclusion is based on the census document,[48] and the engineering department organizational chart,[49] both of which suggest that the total number of potential supervisors whose testimony would need to be considered in order to determine whether some number of class members had "autonomous" remote supervisors (such that Las Vegas was not their single site of employment) seems manageable. And the conclusion is bolstered by the testimony of Dawson and Fairbairn, both of whom suggested that they dealt in a uniform manner with each of their direct reports[50] – which at least gives rise to some possibility that the testimony of those two witnesses may be sufficient.

It is for this reason, however, that the Court has concluded that the class is more appropriately limited to the sales and engineering departments. While plaintiffs propose a broader class made up of all United States employees (thus including the marketing and the general and administrative departments),[51] the Court is not persuaded that the existing record demonstrates that a class that includes those departments would be sufficiently cohesive for common issues to predominate. Including those departments would (based on the census document) add a meaningful number of additional supervisors. And while, as the Court has noted, it is difficult to identify the precise point at which individual issues outweigh the common ones, the Court's judgment is that adding these departments risks crossing that line.

That conclusion is reinforced by the paucity of the record before the Court regarding the operation of the marketing and the general and administrative departments. While the Court has the declarations of Dawson and Fairbairn regarding the way in which assignments were made and monitored in the sales and engineering departments, the record provided to the Court contains virtually nothing about the operation of the other departments. Nor does the plaintiff's supplemental brief address the issue. And while counsel for the plaintiffs ably set forth, at the August 18, 2022 status conference, the reasons the Court might infer that a class that included those additional departments would be sufficiently cohesive, counsel candidly acknowledged that those points were not addressed in its briefing. In response, counsel for the defendant fairly argued that if the Court were going to consider points that the plaintiff did not make in its brief, it should be entitled to the opportunity to consider the arguments and respond to them in writing. Having

---

[48] D.I. 78-7.

[49] D.I. 78-4.

[50] *See* D.I. 78-5 (Fairbairn declaration stating that team members within engineering were treated alike); D.I. 78-6 at 208-209 (Fairbairn deposition testimony about uniform treatment in engineering department); D.I. 78-12 at 136-137 (Dawson deposition testimony that the level of instruction he provided to his reports applied equally to each of the sales department's team leaders).

[51] *See* D.I. 104

*Hoover v. Drivetrain LLC*, Adv. Pro. No. 20-50966
August 19, 2022
Page 15 of 17

already afforded the plaintiffs a further opportunity to supplement the record after concluding that they had not met their burden of satisfying the requirements of Rule 23, the Court believes it appropriate to call the question based on the briefs the parties have filed. And based on the briefing and the record before it, the Court finds that the plaintiffs have not met their burden of showing how a class that includes employees in the defendant's marketing and general and administrative departments would satisfy the predominance requirement. The class this Court will certify will therefore be limited as set forth on page 2 of this letter opinion.

The other requirement of Rule 23(b)(3) is that class adjudication be superior to the alternatives. For the same reasons provided by Judge Silverstein in *In re Pacific Sunwear of California, Inc.*,[52] and by Judge Walrath in *In re United Companies Financial Corporation*,[53] the Court is satisfied that this requirement is satisfied here.

### III. Factual wrinkles among the claims of the class members are most appropriately addressed through a case administration order.

For the reasons described above, the Court is persuaded that, despite the presence of individual issues that some class members (though not the named plaintiffs) will face on the single-site-of-employment issue, the named plaintiffs nevertheless satisfy the typicality requirement and that common issues predominate over individual ones. The Court acknowledges, however, that along the (perhaps unnecessarily winding) path it took reaching that conclusion, it gave serious consideration to the possibility that it might be more appropriate to require a separate subclass of remote employees whose team leaders were themselves remote – perhaps even separate subclasses for remote employees in each of the engineering and the sales departments (in light of the possibilities that the team leaders' levels of autonomy might differ between departments). In the end, the Court was persuaded otherwise. But in light of the plausibility of the arguments for requiring such separate subclasses, the issue warrants a word of explanation.

Rule 23(c)(5) expressly provides that "[w]hen appropriate, a class may be divided into subclasses that are treated as a class under this rule."[54] And the Third Circuit has explained that this device is "designed to prevent conflicts of interest in class representation."[55] But the court hastened to add that while "subclasses can be useful in preventing conflicts of interest, they have their

---

[52] No. 16-10882 (LSS), 2016 WL 3564484, at *10 (Bankr. D. Del. June 22, 2016).

[53] 276 B.R. 368, 376 (Bankr. D. Del. 2002).

[54] Fed. R. Civ. P. 23(c)(5).

[55] *In re Cendant Corp. Securities Litig.*, 404 F.3d 173, 202 (3d Cir. 2005).

Hoover v. Drivetrain LLC, Adv. Pro. No. 20-50966
August 19, 2022
Page 16 of 17

drawbacks."[56] In particular, the court quoted an article by Professor John Coffee that explained that creating a subclass for "each material legal or economic difference" among class members risks creating a "Balkanized" lawsuit that could prove difficult to manage.[57] Similarly, the Third Circuit noted in *In re Insurance Brokerage Antitrust Litigation* that "subclasses are only necessary when members of the class have divergent interests."[58] The court made the same point in *In re Pet Food Products Liability Litigation*, where it concluded that the objectors "have not identified adverse interests that would require the establishment of subclasses."[59]

Here, there is no immediate conflict or adversity between those claimants who were physically resident in Las Vegas and remote employees. The only difference is that the remote employees have a further obstacle to clear in order to establish the "single site of employment" requirement of their WARN Act claims. And after giving the matter careful thought, the Court's judgment is that introducing one or more subclasses would make the lawsuit unnecessarily complex and expensive, without sufficient corresponding benefit to justify the effort.

In particular, the Court is satisfied that many of the purposes of the contemplated subclass can be achieved through an appropriate case management order. Indeed, Rule 23(d)(1)(b) expressly contemplates the entry of a case management order designed to give class members notice to permit them to "present claims or defenses, or to otherwise come into the action,"[60] or to "impose conditions on the representative parties."[61] The Court believes that appropriate case management orders can be entered that will adequately protect the interests of unnamed class members and ensure the various factual wrinkles on which some of those members claims depend are considered in an appropriate manner. Indeed, some cases refer to the use of Rule 23(d) to create a "case-management subclass" in a setting where, as here, there is no actual conflict among the class members."[62]

On the record before it, the Court is persuaded that the distinct issues applicable to some but not all members of the class are best addressed through an appropriate Rule 23(d) case management order. As the Court stated during the August 18, 2022 status conference, the Court does not express a view as to whether

---

[56] *Id.*

[57] *Id.* (citing John C. Coffee, Jr., *Class Action Accountability: Reconciling Exit, Voice, and Loyalty in Representative Litigation*, 100 Colum. L. Rev. 370, 398 (2000)).

[58] 579 F.3d 241, 272 (3d Cir. 2009).

[59] 629 F.3d 333, 344 (3d Cir. 2010).

[60] Fed. R. Civ. P. 23(d)(1)(B)(iii).

[61] Fed. R. Civ. P. 23(d)(1)(C).

[62] *Casale v. Kelly*, 257 F.R.D. 396, 408-409 (S.D.N.Y. 2009) (internal citations and quotations omitted).

*Hoover v. Drivetrain LLC*, Adv. Pro. No. 20-50966
August 19, 2022
Page 17 of 17

such an order should be entered promptly or would more appropriately await further sharpening of the issues as merits discovery proceeds. On this (as with any other matter affecting the conduct of the litigation), the Court would encourage the parties to meet and confer. To the extent there is a disagreement between the parties with respect to any case management issue, the parties are welcome to bring it to the Court's attention by letter, in the same manner set out in this Court's [Chambers Procedures](#) for the handling of discovery disputes.

## Conclusion

For the reasons set forth above, the Court concludes that the record in this case supports the certification of a class made up of "Plaintiffs and all persons (i) who worked at Defendant's Las Vegas Facility and/or who worked in Defendant's sales or engineering departments, (ii) who were terminated without cause beginning on or about September 11, 2020, and within 30 days of that date, or were terminated without cause as the reasonably foreseeable consequence of the mass layoff and/or plant closing ordered by Defendant on or about are 'affected employees' within the meaning of 29 U.S.C. § 2101(a)(5), and (iv) who have not filed a timely request to opt-out of the class." The Court will enter an appropriate order so providing.

Sincerely,

*/s/ Craig T. Goldblatt*

Craig T. Goldblatt
United States Bankruptcy Judge